1

2    **UNITED STATES DISTRICT COURT**

3    **EASTERN DISTRICT OF CALIFORNIA**

4

5

6    | | |
|---|---|
| **TYRUS COLLINS and JAMES GREER,** on behalf of themselves and others similarly situated, | **No. 1:10-CV-00500-OWW-GSA** |
| | **MEMORANDUM DECISION RE: PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** (Doc. 37) |
| **Plaintiffs,** | |
| **v.** | |
| **CARGILL MEAT SOLUTIONS CORPORATION,** a Kansas Corporation, and Does 1 through 50, inclusive, | |
| **Defendants.** | |

15

16                    **I.   INTRODUCTION.**

17      Plaintiffs Tyrus Collins and James Greer brought this action on behalf of themselves and approximately 219 current and former nonexempt hourly workers employed at Defendant Cargill Meat Solutions' facility in Fresno, California.  Plaintiffs allege that Cargill violated state wage-and-hour laws, *e.g.*, it failed to provide employees with paid rest periods of not less that ten minutes for every four consecutive hours worked; and failed to reimburse employees for expenses necessarily incurred in the performance of their job duties for Cargill, namely, the costs of acquiring required safety footwear.[1]

---

[1] Plaintiffs also allege that Defendants failed to pay wages in a timely manner; failed to provide accurate wage statements; and

The parties have entered into a Joint Stipulation of Class Action Settlement Agreement ("Settlement").  Doc. 38-1.  Under the terms of the Settlement, the parties seek:  (1) preliminary approval of the Settlement; (2) provisional certification of the Settlement Class; (3) appointment of Plaintiffs as Class Representatives; (4) appointment of Rust Consulting, Inc. as Claims Administrator; (5) appointment of Anthony J. Orshansky, Esq., and David H. Yeremian, Esq., of Orshansky & Yeremian, LLP, as Class Counsel; (6)  approval of the parties' proposed form and method of notifying Class Members of the Settlement;  (7) an order scheduling the hearing date for final approval of the class settlement; and (7) entry of a preliminary approval order.

Plaintiffs filed a Motion for Preliminary Approval of Class Action Settlement on January 21, 2011.  The motion is unopposed. For the reasons set forth below, the motion is GRANTED.

## II. <u>BACKGROUND</u>.

The facts of this case are well-known to the parties and the Court.  On January 26, 2010, Plaintiffs filed a filed a class action complaint against Defendant Cargill Meat Logistics Solutions, Inc. in the Superior Court of California, County of Los Angeles.  The Complaint alleged six causes of action for violations of Labor Code §§ 203, 204, 226, 2802, IWC Wage Orders, and Business and Professions Code §§ 17200, *et seq*.  Defendant subsequently removed the case to the United States District Court for the Central District of California, Case No. 10-CV-01422-PA-SS.  The

_____

failed to pay wages when due.  See SAC, Doc. 32, ¶¶ 23-55.

case was transferred to the Eastern District of California on February 25, 2010.

Plaintiffs filed a first amended complaint ("FAC") on August 25, 2010, adding a new cause of action under the California Labor Code Private Attorney General Act of 2004, § 2699.  Doc. 23.

Plaintiffs filed the operative second amended complaint (the "SAC") on December 17, 2010.[2]  Doc. 32.  The SAC correctly identifies the Defendant as "Cargill Meat Solutions Corporation" and defines/clarifies the class as "nonexempt hourly employees at any time between August 1, 2008 and the date of preliminary approval by the Court of the settlement."  Cf. FAC, Doc. 23, ¶ 1)("Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who are or were employed by Defendant as nonexempt hourly employees within the State of California at any time four (4) years prior to the original filing of the lawsuit and continuing to the present.").

On January 21, 2011, the parties filed a Stipulation of Settlement and the instant motion for preliminary approval of the proposed settlement.

From January 2010 through the day of the settlement negotiation, the parties conducted extensive formal and informal discovery concerning Defendant's policy and practices.  Plaintiffs' counsel undertook an extensive review of the information amassed during discovery, including: (1) analysis of hundreds of documents

---

[2] The second amended complaint realleges the seven causes of action in the FAC, i.e., violations of Labor Code §§ 201, 202, 203, 204, 226, 2699, 2802, IWC Wage Orders, and Business and Professions Code §§ 17200, *et seq*.  Doc. 32 at ¶¶ 23-55.

produced by Defendant, including time records and payroll data for class members and Defendant's employment records; (2) analysis of Defendant's legal arguments, including *Brinker Rest. Corp. v. Superior Court* (Hohnbaum), 165 Cal. App. 4th 25, 80 Cal. Rptr. 3d 781 (2008) (review granted); (3) analysis of class-wide violations and damages relating to Defendant's reimbursement policies and practices for work-related expenses; (4) review and analysis of Defendant's policies and practices relating to safety equipment and devices required including document relating to workplace safety compliance; and (5) research of the applicable law with respect to Plaintiffs' claims.  Orshansky Decl., Doc. 38, ¶ 11.

### III.  SUMMARY OF THE SETTLEMENT

The case was resolved with the aid of a mediator, Michael Loeb, Esq., and a third party neutral.  The Settlement covers approximately 219 current and former nonexempt hourly workers employed by Defendant in Fresno, California from August 1, 2008 to the date the Court enters an Order of Preliminary Approval. Settlement, ¶ 1.  Under the proposed settlement, a non-revertible fund of $150,000 will be established to provide cash payments to qualified class members ("Net Settlement Fund" or "NSF").  This amount is not subject to any pre-distribution reductions as Defendant has agreed to separately pay claims administration costs.[3]

---

[3] Defendants have agreed to separately pay attorneys' fees and litigation costs, enhancement payments to Class Representatives and required payments to the California Labor and Workforce Development Agency ("CLWD").  Settlement, ¶ 11.

## A.   Payment Terms

Under the proposed settlement, a non-revertible fund of $150,000 will be established to provide cash payments to class members who submit timely and valid Claim Forms ("Qualified Claimant"),[4] based upon the following allocation formula:

> Each Qualified Claimant shall receive a payment based on the number of weeks that he or she worked during the Covered Period, which shall be from August 1, 2008 through preliminary approval.
>
> Each Qualified Claimant will be entitled to a provisional share of the settlement calculated by (1) taking that Qualified Claimant's number of workweeks, (2) dividing that number by the total number of workweeks for all Qualified Claimants, and (3) multiplying the resulting number by the NSF.
>
> For purposes of this calculation, the number of an employee's workweeks shall be calculated by (1) subtracting that employee's first workday period during the Covered Period from his or her last workday of the Covered Period, (2) dividing that number of days by 7, and then (3) rounding to the nearest integer.

Doc. 38-1, ¶ 9(c).

A Notice Packet, which includes a Notice of Pendency of Class Action,[5] Claim Form, and Request for Exclusion Form, will include for each Class Member the number of weeks actively worked during the Class Period and the Class Member's estimated Settlement Amount.  Docs. 38-2 thru 38-4.  The Settlement Amount is based on

---

[4] "Qualified Claimant" is defined as "an individual in the Settlement Class who will have timely submitted a Claim Form properly signed and including the last four number of his or her social security number."

[5] The five-page notice document is headed, "Notice of Pendency of Class Action, Proposed Settlement, Your Rights, and Options for Your to Consider."  Doc. 38-2

the number of workweeks a Qualified Claimant worked compared with other Qualified Claimants who worked during the same time period. Id.   The exact amount a Qualified Claimant receives depends upon how many other Class Members submit timely and valid Claim Forms. Id.

For tax purposes, twenty-five percent (25%) of each Settlement Amount will be deemed wages, fifty-percent (50%) expense as expense reimbursement and twenty-five percent (25%) will be treated as penalties and interest.  Id. ¶ 9(e).  Defendant will pay its share of payroll taxes on any portion of the settlement where payroll taxes are required by law; however, Qualified Claimants will be responsible for correctly characterizing the compensation they receive for tax purposes.

The formula relies upon objective evidence of the number of weeks worked during the Class Period.  Class Members can review and confirm this information, and the Claim Form permits Class Members to challenge the number of weeks worked.  Settlement, ¶ 9(d).

**B.**   **Change in Policy**

Defendant will provide and/or reimburse Class Members for the cost of steel-toe footwear to the extent Defendant requires such footwear to be worn.  Settlement, ¶ 9(c).

**C.**   **Releases**

The Settlement provides that all Class Members other than those who elect not to participate in the Settlement shall have released the "Released Parties" from the "Released Claims."  The Notice contains the following release:

**6**

1    Upon the final approval by the Court of the settlement,
     each Class Member who does not opt out of the
2    settlement, shall, for the period of time extending from
     August 1, 2008 to [preliminary approval], fully release
3    and forever discharge Defendant and its respective
     present and former officers, directors, employees,
4    shareholders, agents, trustees, representatives,
     attorneys, insurers, parent companies, subsidiaries,
5    divisions, affiliates, predecessors, successors,
     assigns, and any individual or entity that could be
6    jointly liable with Defendant (the foregoing are
     collectively referred to hereafter as the "Releasees")
7    from any and all claims, causes of action, damages,
     wages, benefits, expenses, penalties, debts,
8    liabilities, demands, obligations, attorneys' fees,
     costs, and any other form of relief or remedy at law or
9    in equity, of whatever kind or nature, asserted by the
     Covered Claims based on the facts alleged in the Second
10   Amended Complaint ("Complaint") filed in the Lawsuit.

11   "Covered Claims" means any and all claims, demands,
     rights, liabilities, and/or causes of action arising out
12   of the facts alleged in the Complaint for: (1) violation
     of Labor Code § 2802(a); (2) rest-period violations,
13   Labor Code § 226.7; (3) violation of Labor Code § 204;
     (4) violation of Labor Code § 226(a); (5) penalties
14   pursuant to Labor Code § 203; (6) penalties under
     California Labor Code § 2699 et seq.; (7) any penalties
15   that could have been brought based on the violations
     alleged in the Complaint, and (8) violation of Business
16   & Professions Code § 17200, et seq. based on the
     foregoing alleged violations

17

18   Claim Form, Doc. 38-3, pg. 2.

19       Under the Settlement Agreement, Defendant is further entitled

20   to include the following release language on the back of each

21   settlement check:

22   My signature constitutes a full and complete release of
     Cargill Meat Solutions Corp., and any entity that could
23   be jointly liable, by me for all claims I agreed to
     settle by submitting a claim form to participate in the
24   settlement of Collins, et al. V. Cargill Meat Solutions
     Corp., Case No. 1:10-CV-00500-OWW-GSA up to and
25   including the date of preliminary Court approval of the
     settlement, as well as my acknowledgment that I accept
26   this check as payment in full for all California State
     Law claims alleged on my behalf in the lawsuit.

27

28   Doc. 38-1, ¶ 10.

                                7

**D.     Objections and Opt-Out Process**

Any Class Member who so wishes may object or elect not to participate in the Settlement.    The Notice fully explains the objection and opt-out procedures.[6]  Doc. 38-2.

**E.     Class Representative Payments; Claims Administrator Payments;**
**Class Counsel Attorneys' Fees Payment and Class Counsel**
**Litigation Expenses Payment**

Defendant has agreed to make the following payments in addition to and entirely independent of the NSF:

*     a payment to the California Labor and Workforce Development Agency in the amount of $2,000;

*     enhancement payments to the Class Representative Plaintiffs each in the amount of $4,000;

*     Plaintiffs' attorneys' fees not to exceed $82,500, and litigation costs not to exceed $7,500;

*     all fees and costs to the claims administrator not to exceed $10,000.  Should the claims administrator's cost of administration exceed $10,000, such additional cost will be borne solely by Defendant in addition to the total settlement amount.

Settlement, ¶ 11(a).

The exact amounts requested are subject to the Court's final review and approval.  Id.

**F.     Excess Opt-Outs and Right to Rescission**

Defendant retains the right to nullify the settlement, within

---

[6] The Notice provides Qualified Claimants with four options: (1) Participation as a Class Member; (2) Opt Out; (3) Object; or (4) No action.  These options are fully explained in the Notice Form, Doc. 38-2.

8

ten calendar days of expiration of the opt-out deadline, if ten percent or more of Class Members opt out of the settlement. Settlement, ¶ 22.


## IV. DISCUSSION.

### A.   Conditional Certification of a Class for Settlement

Plaintiffs request certification of the Class under Rule 23(c)(1) which permits a court to "make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 466 (E.D. Pa. 2000). Conditional certification requires satisfaction of the pre-requisites of Rule 23(a) and (b). *Id.*


### 1.   *Rule 23(a) Requirements*

Federal Rule of Civil Procedure 23(a) states in pertinent part that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all." As a threshold matter, in order to certify a class, a court must be satisfied that:

> (1) the class is so numerous that joinder of all members is impracticable (the "numerosity" requirement); (2) there are questions of law or fact common to the class (the "commonality" requirement); (3) the claims or defenses of representative parties are typical of the claims or defenses of the class (the "typicality" requirement); and (4) the representative parties will fairly and adequately protect the interests of the class (the "adequacy of representation" requirement).

*In re Intel Secs. Litig.*, 89 F.R.D. 104, 112 (N.D. Cal. 1981) (citing Fed. R. Civ. P. 23(a)).

9

1

 a. *Numerosity*

2 A proposed class must be "so numerous that joinder of all

3 members is impracticable." Fed. R. Civ. P. 23(a)(1). The

4 numerosity requirement demands "examination of the specific facts

5 of each case and imposes no absolute limitations." *Gen. Tel. Co.*

6 *of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980).

7 The proposed class is comprised of current and former

8 nonexempt hourly workers employed at Defendant Cargill Meat

9 Solutions' facility in Fresno, California from August 1, 2008 to

10 the date the Court enters an Order of Preliminary Approval. There

11 are approximately 219 Class Members. Courts have routinely found

12 the numerosity requirement satisfied when the class comprises 40 or

13 more members. *Ansari v. New York Univ.*, 179 F.R.D. 112, 114

14 (S.D.N.Y. 1998). Numerosity is also satisfied where joining all

15 class members would serve only to impose financial burdens and clog

16 the court's docket. *In re Intel Secs. Litig.*, 89 F.R.D. at 112.

17 Here, the joinder of approximately 219 individual current and

18 former employees to hear their several claims would only further

19 clog this Court's already overburdened docket.

20

21

 b. *Common Questions of Fact and Law*

22 Rule 23(a) also demands "questions of law or fact common to

23 the class." Fed. R. Civ. P. 23(a)(2). It does not require that

24 all questions of law or fact be common to every single member of

25 the class. To satisfy the commonality requirement, plaintiffs need

26 only point to a single issue common to the class. *Dukes v.*

27 *Wal-Mart, Inc.*, 509 F.3d 1168, 1177 (9th Cir. 2007). Commonality

28 exists when there is either a common legal issue stemming from

**10**

divergent factual predicates or a common nucleus of facts resulting in divergent legal theories. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

In this case, potential Class Members share the following legal and factual questions:

- Whether Defendant failed to provide nonexempt hourly employees with paid rest periods of not less that ten minutes for every four consecutive hours worked;

- Whether Defendant failed to reimburse nonexempt hourly employees for expenses necessarily incurred in the performance of their job duties for Defendant, namely, the costs of acquiring required safety footwear;

- Whether Defendant failed to pay nonexempt hourly employees premium pay for each day on which requisite rest periods were not provided or were deficiently provided;

- Whether Defendant failed to pay premium pay or reimburse nonexempt hourly employees for necessarily incurred expenses at the time of termination or within 72 hours of resignation;

- Whether the above practices violate the Labor Code and Wage Orders.

These common questions of law or fact shared by all prospective class members are sufficient to satisfy the commonality requirement.


            c.  *Typicality*

Rule 23(a)(3) demands "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001). Typicality is satisfied if the representatives' claims arise from the same course of conduct as the class claims and are based on the same legal theory. *See, e.g., Kayes v. Pac. Lumber Co.*, 51 F.3d

1449, 1463 (9th Cir. 1995) (claims are typical where named plaintiffs have the same claims as other members of the class and are not subject to unique defenses).

Because every class member was paid under the same pay practices as every other class member (nonexempt hourly employees), the Class Representatives' claims are typical of those of the other Class Members.  The typicality requirement is satisfied.

### d.   *Fair & Adequate Representation*

The final Rule 23(a) prerequisite is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "The proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000).

All requirements are satisfied here.  Proposed class counsel, Anthony J. Orshansky, Esq., and David H. Yeremian, Esq., of Orshansky & Yeremian, LLP, have significant experience litigating class actions, serving as class counsel, representing plaintiffs in wage and hour litigation.  Orshanksy Decl., Doc. 38, ¶¶ 3-4. Proposed Class Counsel have no conflicts with the class, Id. at ¶26 (e), and have devoted a significant amount of time to the lawsuit Id. ¶ 11.

Additionally, the Class Representatives' interests are completely aligned with those of the class - to maximize their

12

recovery.   Although they will each receive an additional $4,000, this amount is reasonable compensation for the time and expense they spent on this case.   Id. ¶ 15.

### 2.   Certification of a Class under Rule 23(b)(3)

Once the threshold requirements of Rule 23(a) are satisfied, a class may be certified only if the class action satisfies the superiority requirements of Rule 23(b)(1), (b)(2), and/or (b)(3). The parties agree for purposes of the Settlement only that certification of the Class is appropriate under Rule 23(b)(3) because "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and ... a class action is superior to other available methods for the fair adjudication of the controversy." Fed. R. Civ. P. 23(b)(3); accord Orshanksy Decl., Doc. 38, ¶ 26(g).

### B.   Preliminary Approval of the Settlement

In reviewing the settlement, although it is not a court's province to "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute," a court should weigh the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation;  the stage of the proceedings, and the value of the settlement offer. *Chem. Bank v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).  The court should also watch for collusion between class counsel and defendants.  *Id*.

Preliminary approval of a settlement and notice to the proposed class is appropriate: "[i]f [1] the proposed settlement

13

appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with the range of possible approval...." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (adding numbers).   The Settlement proposed by the parties satisfies this test.

### 1.   The Settlement Was the Product of Informed, Arm's Length Negotiations

The Settlement was reached after informed, arm's length negotiations between the parties.   Both parties conducted extensive investigation and discovery allowing them to assess the strengths and weaknesses of the case.   Plaintiffs' counsel had access to thousands of documents, including payroll data, time records, and policies and practices for work-related expense reimbursement and workplace safety compliance.   Orshanksy Decl., Doc. 38, ¶ 10.   The parties participated in mediation with an impartial mediator, Mr. Michael Loeb, Esq.   Id. at ¶ 11.   The Settlement is the product of non-collusive negotiations.

### 2.   The Proposed Settlement Has No "Obvious Deficiencies"

The Settlement provides for a payment of $150,000 by Defendants, which is substantial given the size of the class, 219 Class Members, and limited nature of the alleged violations at issue, SAC, Doc. 32, ¶¶ 23-55.   All Settlement Amounts to be paid under the Settlement are determined by the number of weeks each Class Member worked between August 1, 2008 and the date of

14

preliminary approval by the Court of the settlement.  This amount is not subject to any pre-distribution reductions as Defendant has agreed to separately pay claims administration costs.  The provisions and structure of the NSF are appropriate, fair, and ensure that the entire $150,000, about $685.00 per member, is directed to class members who submit timely and valid Claim Forms. Defendant will also provide and/or reimburse Class Members for the cost of steel-toe footwear to the extent Defendant requires such footwear to be worn.

The Class Representative payments and the Class Counsel attorneys' fees and costs payment are appropriate, and are subject to court approval at the final approval hearing.  The expected Settlement Administrator's fees and costs of approximately $10,000 is reasonable.  The payment to the California Labor and Workforce Development Agency in the amount of $2,000 is reasonable.

### 3. The Settlement Falls Well Within the Range of Possible Approval

To determine whether a settlement "falls within the range of possible approval" a court must focus on "substantive fairness and adequacy," and "consider plaintiffs' expected recovery balanced against the value of the settlement offer."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080.

If the litigation proceeds, Plaintiffs would face significant risks.  For instance, several of the principal claims in this case revolve around the provision of rest periods.  The meaning of an employer's obligation to provide rest periods/meal breaks under California law is currently before the California Supreme Court.

15

*See Brinker Rest. Corp. v. Superior Court* (Hohnbaum), 165 Cal. App. 4th 25, 80 Cal. Rptr. 3d 781 (2008) (review granted)); accord Orshanksy Decl., Doc. 38, ¶ 6.   A defense ruling in Brinker could impair Plaintiffs' ability to proceed on these causes of action. The remaining claims challenge the legality of Defendant's policies and practices relating to reimbursements and workplace safety gear, among others.   Defendant sharply disputed the accuracy of these allegations during discovery.

Even if Plaintiffs were to prevail, they would be required to expend considerable additional time and resources potentially outweighing any additional recovery obtained through successful litigation. Additionally, continued litigation would delay payment to the Class Members and increase the amount of attorneys' fees.

In light of these risks, the proposed recovery is fair, reasonable, and adequate and is in the best interest of the Class Members in light of all known facts and circumstances.

4. <u>The Claim Form's Release Is Proper and Not Overly Broad</u>

As part of the Settlement, Class Members will be deemed to have released "all claims, causes of action, damages, wages, benefits, expenses, penalties, debts, liabilities, demands, obligations, attorneys' fees, costs, and any other form of relief or remedy at law or in equity, of whatever kind or nature, asserted by the Covered Claims based on the facts alleged in the Second Amended Complaint [] filed in the Lawsuit."   Claim Form, Doc. 38-3, pg. 2.   The Claim Form defines "Covered Claims" as "any and all claims, demands, rights, liabilities, and/or causes of action arising out of the facts alleged in the Complaint for: (1)

16

violation of Labor Code § 2802(a); (2) rest-period violations, Labor Code § 226.7; (3) violation of Labor Code § 204; (4) violation of Labor Code § 226(a); (5) penalties pursuant to Labor Code § 203; (6) penalties under California Labor Code § 2699 et seq.; (7) any penalties that could have been brought based on the violations alleged in the Complaint, and (8) violation of Business & Professions Code § 17200, et seq. based on the foregoing alleged violations." Id.

These released claims appropriately track the breadth of Plaintiffs' allegations in the action and the settlement does not release unrelated claims that class members may have against defendants. *Cf. Bond v. Ferguson Enter., Inc.*, No. 1:09-CV-01662-OWW-MJS, 2011 WL 284962, at 7 (E.D. Cal. Jan. 25, 2011)("This form of release is overbroad by arguably releasing all unrelated claims up to the date of the Agreement.").

### 5. Collusion

There is no evidence of collusion. The settlement is preliminarily approved as fair and reasonable, subject to a narrowing of the release.

## C. Proposed Class Notice & Administration

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th

17

Cir. 2004) (internal quotations and citations omitted).

The proposed Notice (Doc. 38-2) and the manner of notice agreed upon by the parties (Settlement, Doc. 38-1, ¶¶ 13-14) is "the best notice practicable," as required under Rule 23(c)(2)(B). All Class Members can be identified and the Notice and related materials (Claim Form, Doc. 38-3, and Request for Exclusion Form, Doc. 38-4) will be mailed directly to each Class Member.  The Class Notice adequately informs Class Members of the nature of the litigation, the essential terms of the Settlement, and how to make a claim under the Settlement, object to or comment on the Settlement, or elect not to participate in the Settlement. Additionally, the Class Notice identifies Class Counsel, specifies the amounts of the Class Representative and CLWD payments, Class Counsel Attorneys' fees and cost, the expense of administering the claims, and explains how to obtain additional information regarding the action and the Settlement.

Within ten days of approval of this preliminary settlement agreement, Defendant will transmit to the Claims Administrator the following information concerning each of the approximate 219 Class Members: (1) name; (2) last known home address and telephone number; (3) social security number; and (4) dates of employment during the Covered Period.  Settlement, ¶ 13.  The Settlement Administrator will mail the Notice, Claim Form, and Request for Exclusion to Class Members within 20 days following the preliminary approval.  Id. ¶ 14.  Class Members must submit and postmark their Claim Form, Objections, and/or Request for Exclusion Forms no later than 45 days after the Notice is mailed.  Id. ¶ 15.  The Settlement Administrator will resend improperly completed Claim Forms; and

18

Class Members who receive a re-mailed Claim Form will have 15 days to correct, complete, and/or sign the Claim Form.  Id.

The Claim Form includes each individual Class Member's weeks worked and estimated Settlement Award.  Id. ¶ 9(d).  Defendant's employment records will control, however, the parties will make a good faith effort to resolve any dispute over the proper size of a particular claim.  Id.  If the parties cannot resolve the dispute, it will be referred to the claims administrator for determination. Id.

The Claim Forms will be sent directly to the Claims Administrator.  Id. ¶ 17.  Defendant will provide the Claims Administrator with the Class Data List that the administrator will use to calculate each Class Member's proportional share.  Id.  The Claims Administrator is responsible for calculating the payments, issuing the payments and calculating and withholding all required state and federal taxes, if any.  Id.  Upon completion of the calculation of payments, the Claims Administrator will provide Plaintiffs and Defendant with a report listing the amount of all payments to be made to each Qualified Claimant.  Id.  Proof of payment will be filed with the Court and provided to the Parties' counsel as directed by the Court.  Id.

The procedures set forth in the Settlement provide the best possible notice to the Class Members.

D.  <u>Rust Consulting, Inc. Is an Appropriate Settlement Administrator</u>

The parties have agreed upon and recommend that the court appoint Rust Consulting, Inc., to serve as the Settlement

Administrator.   Rust Consulting's proposed fee is $10,000.
Settlement, ¶ 11(c).   Should the claims administrator's cost of
administration exceed $10,000, such additional cost will also be
paid solely by Defendant.   Id.

E.   <u>Settlement Approval Schedule</u>

        The parties submit the following schedule for approval of the
Settlement:

| Timing | Event |
|---|---|
| March 17, 2011 – 10 calendar days after preliminary approval of settlement. | Defendant provides Claims Administrator mailing addresses for Class Members. |
| March 25, 2011 – Within 20 calendar days after preliminary approval of settlement. | Claims Administrator mails Notice Packet to Class Members. |
| May 9, 2011 – 45 calendar days after preliminary approval of settlement. | Deadline for Class Members to submit Claim Form, Exclusion Form or Objections. |
| May 30, 2011 – 28 calendar days before final approval of hearing. | Plaintiffs file Motion for Final Approval of Class Action Settlement. |
| June 27, 2011 at 10:00 a.m. | Final Approval Hearing. |

///
///
///
///

20

## V. <u>CONCLUSION</u>

For all the reasons set forth above:

(1) The Settlement Class is conditionally certified;

(2) The Class Settlement is preliminarily approved;

(3) Anthony J. Orshansky, Esq., and David H. Yeremian, Esq., of Orshansky & Yeremian, LLP, are appointed Class Counsel;

(4) The named plaintiffs, Tyrus Collins and James Greer, are appointed Class Representatives;

(5) Rust Consulting, Inc. is appointed Claims Administrator; and

(6) The Class Notice and related materials are approved for distribution;

IT IS SO ORDERED.

Dated:   March 8, 2011                        /s/ Oliver W. Wanger
                                        UNITED STATES DISTRICT JUDGE