1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYRUS COLLLINS and JAMES GREER, on behalf of themselves and others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>CARGILL MEAT SOLUTIONS CORPORATION, a Kansas corporation; and DOES 1 through 50, inclusive,<br><br>    Defendants. | 1:10-cv-00500 OWW MJS<br><br>MEMORANDUM DECISION RE UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (DOC. 46) AND FOR ATTORNEYS' FEES AND COSTS (DOC. 47) |

## I. INTRODUCTION

This is a wage-and-hour class action brought on behalf of meat workers employed by Cargill Meat Solutions Corp., in Fresno County, California.  Declaration of Anthony J. Orshansky ("Orshansky Decl."), Doc. 48 ¶ 5; *see also* Second Amended Class Action Complaint ("SAC"), Doc. 32, filed Dec. 17, 2010.  The action is brought on behalf of Plaintiffs and approximately 239 current and former employees of Defendants' from August 1, 2008 to March 7, 2011 for alleged violations of state wage-and-hour laws.  Orshansky Decl. at ¶ 16.

The parties have entered into a Joint Stipulation of Settlement Agreement.  Orshansky Decl. at ¶ 11.  A March 7, 2011 memorandum decision: (1) conditionally certified a Settlement

1

PDF created with pdfFactory trial version www.pdffactory.com

Class; (2) appointed Class Counsel; (3) appointed Class
Representatives; (4) appointed a Settlement Administrator; (5)
preliminarily approved the Class Settlement; (6) approved the
class Notice and related materials for distribution; (7) directed
the mailing, by first-class mail, of the Notice Packet by March
25, 2011; and (8) scheduled a final approval hearing for June 27,
2011.  Doc. 41.  Plaintiffs have filed a motion for final
approval of the settlement, Doc. 44, along with supporting
declarations, Docs. 48-48-1.  Plaintiffs have also moved for
approval of their request for attorneys' fees and costs, Doc. 45,
and filed a supporting declaration, Doc. 48.  No objections to
approval have been received.  *See* Declaration of Amanda J. Myette
("Myette Decl."), Doc. 48-1 ¶ 15.

## II. BACKGROUND

Plaintiffs allege Defendants failed to reimburse Employees
for expenses they necessarily incurred in the performance of
their job duties; failed to provide legally required rest
periods; failed to pay premium pay for each day on which
requisite rest periods were not provided or were deficiently
provided; failed to pay out wages twice per calendar month;
failed to provide accurate itemized wage statements; and
willfully failed to pay all wages due upon termination or
separation of employment.  Plaintiffs sought to certify a class
composed of themselves and similarly situated individuals, and

2

sought declaratory relief and recovery of unreimbursed business expenditures, back wages, interest, penalties, attorneys' fees, and costs. *See* SAC.

Both prior and subsequent to the complaint being filed, Plaintiffs conducted substantial discovery and non-discovery investigation regarding class certification and the merits of their claims. Oshansky Decl. ¶ 7. After suit was filed, Plaintiffs propounded written discovery requesting documents and information relating to Defendant's employment policies and practices; pay and time records; Class Members' wages, paychecks, wage statements, and termination wages; Defendant's policies and practices relating to reimbursement for work-related expenses; Defendant's policies and practices relating to safety equipment and devices required; and other matters relating to certification issues. *Id.* at ¶ 9. Prior to mediation, Class Counsel also devoted substantial time and resources to meeting and conferring with opposing counsel regarding discovery; negotiating a protective order; reviewing the documentation provided by Defendant; doing follow-up research on relevant legal and procedural questions; preparing damage models; and developing settlement and negotiation strategies. *Id.* at ¶ 10.

### III. SUMMARY OF THE SETTLEMENT

The case was resolved with the aid of a mediator, Michael Loeb, Esq. The Settlement covers approximately 239 current and

3

former meat workers employed by Defendant in California ("Class Members") from August 1, 2008 to March 7, 2011 ("Covered Period").   Settlement Agreement ("Settlement"), Doc. 38-1, § 9(c); *see also* Oshansky Decl. ¶ 16.

A.   <u>Settlement Payment.</u>

Under the Settlement, Defendant will make payments totaling approximately $260,000.00, which will be paid out within 15 business days following the final approval of the settlement. *See* Settlement §§ 9, 11.   This sum will cover:

- settlement awards to be paid to Class Members who timely submit valid claims (paid out of the Net Settlement Fund of $150,000.00);

- a $2,000 payment to the California Labor and Workforce Development Agency for the amount in penalties due to it under Labor Code § 2699, *et seq.*

- the Settlement Administrator's reasonable fees and expenses (no more than $10,000);

- (subject to court approval) payments to Plaintiffs, in addition to their Settlement Awards, of $4,000 each in compensation of their services as Class Representatives;

- (also subject to court approval) payments to Class Counsel of $82,500, for their reasonable attorneys' fees, as well as actual litigation costs, up to $7,500.

4

PDF created with pdfFactory trial version www.pdffactory.com

*See* Settlement, §§ 9, 11.  There will be no reversion of the Net Settlement Fund to Defendant.  *Id.* at § 9(a).

B.   <u>Payment of Settlement Awards.</u>

The Net Settlement Fund ("NSF") of $150,000 will be completely separate from any other payments the Defendant makes. Oshansky Decl. ¶ 12.  It will be distributed to all Class Members who timely submit valid claims ("Qualified Claimants"), based upon the following allocation formula:

> Each Qualified Claimant shall receive a payment based on the number of weeks that he or she worked during the Covered Period, which shall be from August 1, 2008 through preliminary approval.  Each Qualified Claimant will be entitled to a provisional share of the settlement calculated by (1) taking the Qualified Claimant's number of workweeks, (2) dividing that number by the total number of workweeks of all Qualified Claimants, and (3) multiplying the resulting number by the NSF.  For purposes of this calculation, the number of employee's "Workweeks" shall be calculated by (1) subtracting the employee's first workday during the Covered Period from his or her last workday of the Covered Period, (2) dividing that number of days by 7, and then (3) rounding to the nearest integer.

Settlement, § 9(c).  A Claim Form, which was mailed to Class Members with the "Notice of Pendency of Class Action, Proposed Settlement, Your Rights, and Options for you to Consider" ("Notice"), included for each Class Member the number of weeks worked during the Class Period and the Class Member's estimated Settlement Amount.  *See* Claim Form, Doc. 38-3.

For tax purposes, one-quarter (1/4) of each settlement amount awarded will be deemed wages, one-half (1/2) will be characterized as expense reimbursement, and one-quarter (1/4)

5

PDF created with pdfFactory trial version www.pdffactory.com

will be treated as penalties and interest.   Settlement Awards

will be subject to applicable tax withholding and reporting.

Settlement, § 9(e).

The formula relies upon objective evidence of the number of

weeks worked during the Class Period, provided by the Defendant.

Settlement, § 17.   Class Members could also review and confirm

this information, and the Claim Form permitted Class Members to

challenge the number of weeks worked.   *See* Claim Form, § 2(B).

C.   Distribution of Unclaimed Funds and Uncashed Checks.

The Settlement is structured so as to distribute the

entirety of the NSF, regardless of whether or not every member of

the class files a valid claim form.   There will be no unclaimed

funds.   *See* Settlement, § 9(c).   Checks that remain uncashed

after one hundred and eighty (180) calendar days shall revert to

the California Uncashed Check Fund in the name of the Qualified

Claimant.   Settlement, § 18.

D.   Scope of the Release.

The Settlement provides that all Class Members, other than

those who elect not to participate in the Settlement, shall have

released the "Released Parties" from the "Covered Claims."   The

Notice contains the following release:

> Upon the final approval by the Court of the settlement, each
> Class member who does not opt out of the settlement, shall,
> for the period of time extending from August 1, 2008 to
> [preliminary approval], fully release and forever discharge
> Defendant and its respective present and former officers,

6

PDF created with pdfFactory trial version www.pdffactory.com

directors, employees, shareholders, agents, trustees, representatives, attorneys, insures, parent companies, subsidiaries, divisions, affiliates, predecessors, successors, assigns, and any individual or entity that could be jointly liable with Defendant (the foregoing are collectively referred to hereafter as the "Releasees") from any and all acclaims, causes of action, damages, wages, benefits, expenses, penalties, debts, liabilities, demands, obligations, attorney's fees, costs, and any other form of relief or remedy at law or in equity, of whatever kind or nature, asserted by the Covered Claims based on the facts alleged in the Second Amended Complaint ("Complaint") filed in the Lawsuit.

"Covered Claims" means any and all claims, demands, rights liabilities, and/or causes of actions arising out of the facts alleged in the Complaint for: (1) violation of Labor Code § 2802(a); (2) rest-period violations, Labor Code § 226.7; (3) violation of Labor Code § 204; (4) violation of Labor code § 226(a); (5) penalties pursuant to Labor Code § 203; (6) penalties under California Labor Code §2609 *et seq.*; (7) any penalties that could have been brought based on the violations alleged in the Complaint, and (8) violation of Business & Professions Code §17200, *et seq.* based on the foregoing alleged violations.

Claim Form, § 4. Furthermore:

Representative Plaintiffs additionally expressly waive any and all rights they have under Section 1542 of the Civil Code of the State of California, which provides:

"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

Notwithstanding the provision of Section 1542, and for the purpose of implementing a complete release and discharge, Representative Plaintiffs expressly acknowledge the this Settlement Agreement is intended to include in its effect, without limitation, claims and causes of action which they do not know of or suspect to exist in their favor at the time of execution hereof and that his agreement contemplates the extinguishment of all such claims and causes of action.

7

PDF created with pdfFactory trial version www.pdffactory.com

Settlement, § 10(c).  The § 1542 release does not extend to non-representative class members.

E.    Objections and Opt-Out Process.

        Any Class Member who so wishes may object or elect not to participate in the Settlement. Settlement, §§ 19, 20.  The Notice fully explains the objection and opt-out procedures. *See* Notice, § VI; *see also* "Exclusion Form", Doc 38-4.

F.    Class Representative Payments; Class Counsel Attorneys' Fees Payment and Class Counsel Litigation Expenses Payment.

        The settlement also permits Plaintiffs and their counsel to seek by separate motion:

        • payments to Plaintiffs, in addition to their Settlement Awards, of $4,000 each in compensation of their services as Class Representatives; and

        • payments to Class Counsel of $82,500, for their reasonable attorneys' fees, as well as litigation costs, up to $7,500.

*See* Settlement, §§ 11(a), (b).

                        III. DISCUSSION

A.    Certification of a Class for Settlement.

        As the Class has only been conditionally certified, final certification is required and is governed by Federal Rule of Civil Procedure Rule 23.

        1.    Rule 23(a) Requirements.

8

PDF created with pdfFactory trial version www.pdffactory.com

Federal Rule of Civil Procedure 23(a) states in pertinent part that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all."  As a threshold matter, in order to certify a class, a court must be satisfied that

> (1) the class is so numerous that joinder of all members is impracticable (the "numerosity" requirement); (2) there are questions of law or fact common to the class (the "commonality" requirement); (3) the claims or defenses of representative parties are typical of the claims or defenses of the class (the "typicality" requirement); and (4) the representative parties will fairly and adequately protect the interests of the class (the "adequacy of representation" requirement).

*In re Intel Secs. Litig.*, 89 F.R.D. 104, 112 (N.D. Cal. 1981)(citing Fed. R. Civ. P. 23(a)).

a.  Numerosity.

Here, the proposed class is comprised of all individuals who have been employed by Defendant in their Fresno Grind Facility from August 1, 2008 to March 7, 2011.  There are approximately 239 Class Members.  Courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members.  *Ansari v. New York Univ.*, 179 F.R.D. 112, 114 (S.D.N.Y. 1998).  Numerosity is also satisfied where joining all Class members would serve only to impose financial burdens and clog the court's docket.  *In re Intel Secs. Litig.,* 89 F.R.D. at 112. Here, the joinder of approximately 239 individual current and former employees would only further clog this court's already overburdened docket.

9

PDF created with pdfFactory trial version www.pdffactory.com

b.   <u>Common Questions of Fact and Law.</u>

Commonality exists when there is either a common legal issue stemming from divergent factual predicates or a common nucleus of facts resulting in divergent legal theories.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  It does not require that all questions of law or fact be common to every single member of the class.  To satisfy the commonality requirement, plaintiffs need only point to a single issue common to the class. *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1177 (9th Cir. 2007); *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 655 (C.D. Cal. 2000).

Here, Class Members share the following legal and factual questions:

- Whether Defendant violated California Labor Code ("CLC") § 2802 by failing to reimburse Employees for necessary expenditures incurred in the course of their employment;

- Whether Defendant violated CLC § 226.7 and the applicable IWC Wage Orders, by failing to provide Employees with rest periods for every four consecutive hours of work without paying them one hour of wages at their regular rates of pay for each day that requisite rest periods were not provided or were deficiently provided;

- Whether Defendant violated CLC § 204 by failing to pay

10

Employees all wages due at least twice per calendar month;

- Whether Defendant violated CLC § 226(a) by not providing employees accurate itemized wage statements;

- Whether Defendant violated CLC §§ 201-203 by failing to pay wages and compensation due and owing at the time of termination;

- Whether Defendant violated California Business & Professions Code § 17200 *et seq.* based on the above; and,

- Whether Plaintiffs and members of the proposed class are entitled to equitable relief pursuant to <u>§ 17200.</u>

Every Class Member was paid under the same pay practices as every other class members.  The commonality requirement is satisfied.

c.   <u>Typicality.</u>

Typicality is satisfied if the representatives' claims arise from the same course of conduct as the class claims and are based on the same legal theory.  *See, e.g., Kayes v. Pac. Lumber Co.,* 51 F.3d 1449, 1463 (9th Cir. 1995)(claims are typical where named plaintiffs have the same claims as other members of the class and are not subject to unique defenses).  Because every class member was paid under the same pay practices as every other class member, the Class Representatives' claims are typical of those of

11

1   the other Class Members.  The typicality requirement is

2   satisfied.

3

4           d.   Fair and Adequate Representation.

5       The final Rule 23(a) requirement is that the class

6   representative fairly and adequately protect the interests of the

7   class.  Fed. R. Civ. P. 23(a)(4).  "The proper resolution of this

8   issue requires that two questions be addressed: (a) do the named

9   plaintiffs and their counsel have any conflicts of interest with

10  other class members and (b) will the named plaintiffs and their

11  counsel prosecute the action vigorously on behalf of the class?"

12  *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 462 (9th Cir.

13

14  2000).

15      Both requirements are satisfied here.  Class counsel,

16  Anthony J. Orshansky, Esq., of the law firm Orshansky & Yeremian,

17  LLP, has significant experience litigating class actions, serving

18  as class counsel, and representing plaintiffs in wage and hour

19  litigation.  *See* Orshansky Decl. at ¶ 2.  Class counsel has no

20  conflicts with the class, *id.* at ¶ 18, and has devoted a

21

22  significant amount of time to the lawsuit, *id.* at ¶ 35.

23      In addition, the Class Representatives' interests are

24  completely aligned with those of the class.  The Class

25  Representatives' interest is in maximizing their recovery.

26  Although they will each receive an additional $4,000, this amount

27  is reasonable compensation for the time and expense they devoted

28
                                    12

to pursuing this case, as well as for the inherent risk involved in their doing so. *See id.* at ¶¶ 42-49.

    2.   <u>Certification of a Class under Rule 23(b)(3).</u>

    Once the threshold requirements of Rule 23(a) are satisfied, a class may be certified only if the class action satisfies the requirements of Rule 23(b)(1), (b)(2), and/or (b)(3).  Here, the parties agree for purposes of the Settlement only that certification of the Class is appropriate under Rule 23(b)(3) because "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and ... a class action is superior to other available methods for the fair adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

B.   <u>The Terms of the Preliminary Approval Have Been Satisfied.</u>

    The March 7, 2011 preliminary approval of the Settlement and conditional certification of the Class ordered that the Class be sent notice of the Settlement, approved the form of notice proposed by the parties, approved the forms of claims for settlement share and election not to participate, and set the hearing for final approval.  Doc. 41.  The Settlement Administrator, Rust Consulting, Inc. ("Rust"), has carried out this Court's order to the extent possible.  *See generally* Declaration of Amanda J. Myette, Doc. 40.  On March 25, 2011, Class Notices were mailed to all 239 Class Members.  *Id.* at ¶ 9.

13

The U.S. Postal Service returned 23 Class Notices as
undeliverable.  *Id.* at ¶ 10.  Two of these were returned after
the Claim Form deadline, but Rust performed address traces on the
21 undeliverable Class Notices that were returned before the
deadline.  *Id.*  The traces yielded 17 updated addresses and Class
Notices were promptly mailed to those Class Members via First-
Class mail.  Of these 17 re-mailings, 3 were returned as
undeliverable.  *Id.*  Nine Class Notices remained undeliverable
because the administrator was unable to find a deliverable
address.  *Id.*  On April 19, 2011, the Settlement Administrator
mailed a reminder to class members who had not yet submitted a
Claim Form or an Exclusion Form to do so by the May 9, 2011
deadline.  *Id.* at ¶ 13.

        Despite these difficulties, 167 Claim Forms (~70%) were
received and accepted by the Settlement Administrator.  *Id.* at ¶
11.  These Claim Forms also account for 88.15% of the total
possible claimed work weeks.  *Id.*  According to Plaintiffs, these
figures represent a strongly positive response for a wage-and-
hour class-action-settlement.  Oshansky Decl., at ¶ 17.
Additionally, zero individuals submitted Exclusion Forms, and no
class member has submitted an objection to the Settlement.
Myette Decl., at ¶¶ 14, 15.

C.   <u>Approval of the Settlement.</u>
        "The court must approve any settlement ... of the claims ...

                                14

of a certified class." Fed. R. Civ. P. 23(e)(1)(A).  A
settlement may be approved only after a hearing and on finding
that it is fair, reasonable, and adequate.  Fed. R. Civ. P.
23(e)(1)(C).  Such approval is required to make sure that any
settlement reached is consistent with plaintiffs' fiduciary
obligations to the class.  *See Ficalora v. Lockheed Cal. Co.*, 751
F.2d 995, 996 (9th Cir. 1985).  The court also serves as guardian
for the absent class members who will be bound by the settlement,
and therefore must independently determine the fairness of any
settlement.  *Id*.  However, the district court's role in intruding
upon what is otherwise a private consensual agreement is limited
to the extent necessary to reach a reasoned judgment that the
agreement is not the product of fraud or collusion between the
negotiating parties, and that the settlement, taken as a whole,
is fair, reasonable, and adequate to all concerned.  *FDIC v.
Alshuler*, 92 F.3d 1503, 1506 (9th Cir. 1996).  Therefore, the
settlement hearing is not to be turned into a trial or rehearsal
for trial on the merits.  *Officers for Justice v. Civil Service
Com.*, 688 F.2d 615, 625 (9th Cir. 1982).  Ultimately, the
district court's determination is nothing more than an amalgam of
delicate balancing, gross approximations, and rough justice.  *Id*.

     In determining whether a settlement agreement is fair,
adequate, and reasonable to all concerned, a district court may
consider some or all of the following factors: (1) the strength

15

PDF created with pdfFactory trial version www.pdffactory.com

of the Plaintiff's case (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed; (6) the stage of the proceedings; (7) the views and experience of counsel; (8) any opposition by class members; (9) the presence of a governmental participant. *Linney v. Cellular Alaska Pshp.*, 151 F.3d 1234,1242 (9th Cir. 1998). This list of factors is not exclusive and the court may balance and weigh different factors depending on the circumstances of each case. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

      1.   **The Relative Strengths of the Parties' Cases Supports Approval of the Settlement.**

Defendants contest liability in this action and disputed Class Counsel at every step. Oshansky Decl., at ¶ 6. If the litigation proceeds, Plaintiffs would face significant risks. For example, one of the primary issues in this case revolves around the reimbursement for steel-toe footwear. However, whether or not an employer must reimburse purchases required for operational safety absent a regulation in the industry is not settled law. Compare *Appeal of: Kaiser Steel Corp. Steel Mfg.*, 1981 WL 140491 (Mar. 5, 1981), *3 (California Occupational Health and Safety Appeals Board held that regulation required employer to pay for safety shoes); with *In re Newman Flange & Fitting Co.*,

16

Co. 07-R2D4-2581, 2009 CA-OSHA App. Bd. Lexis 101 (Cal-OSHA) App., Sept. 30, 2009) (holding that employer was *not* required to pay for safety shoes).

Another major issue in this case involves the provision of rest breaks.  Whether rest break claims result in individual inquiries predominating, thus frustrating class certification, under California law is currently before the California Supreme Court (see *Brinkley v. Public Storage, Inc.*, 198 P.3d 1087, 87 Cal.Rptr 674 (Jan. 14, 2009) (review granted) and *Brinker Restaurant Corp. v. Superior Court*, 196 P.3d 216, 85 Cal. Rptr. 388 (Oct. 22, 2008) (review granted).  A defense ruling in Brinker would impair Plaintiff's ability to proceed on these causes of action.  *See Brown v. Federal Express*, 249 FRD 580, 585 (C.D. Cal. 2008) (denying class certification of employees alleging employers denied them meal breaks and rest breaks, and failed to pay additional one hour of pay to employees who missed meal breaks).

In light of these risks, the significant recovery is fair, reasonable, and adequate, and is in the best interest of the Settlement Class in light of all known facts and circumstances.

2.   The Settlement Amount is Fair and Reasonable.

The Settlement provides for a payment of about $260,000.00 by Defendants.  The average payment to Class Members is $898.20.

17

PDF created with pdfFactory trial version www.pdffactory.com

Myette Decl., at ¶ 11.  All Settlement shares will be distributed to each Claimant on the basis of the number of weeks actively worked by each Claimant during the Class Period.  Settlement, § 9(c).

The Class Representative Payments and the Class Counsel Attorneys' Fees Payment are appropriate, and are separately approved below.

Finally, the expected Settlement Administrator's fees and costs of approximately $10,000 are reasonable in light of the amount of work achieved.  *See* Myette Decl., Doc 48-1.

3.   <u>The Release is Appropriate.</u>

As part of the Settlement, Class Members release the following claims: "any and all Covered Claims [listed in the Complaint] in addition to any claims relating to or arising from their employment with Defendant, whether known or unknown, that could have asserted in the Complaint."  Settlement, § 10(c).  These released claims appropriately track the breadth of Plaintiffs' allegations in the action and the settlement does not release unrelated claims that class members may have against defendants.

4.   <u>The Settlement Was the Project of Informed, Arm's Length Negotiations.</u>

The Settlement was reached after informed, arm's length negotiations between the parties.  *See* Oshansky Decl., at ¶¶ 10,

18

11.  Plaintiffs' counsel had access to documents including all of the Defendant's expenses, equipment, and reimbursement policies as well as time records for Class Members.  *Id.* at ¶ 10. Plaintiffs' counsel reviewed and analyzed all these materials. *Id*.  Counsel was also informed by lengthy interviews with the Representative Plaintiffs.  *Id.* at ¶ 7.  In addition, there is no evidence of collusion.

5.  <u>Reaction of the Class Members.</u>

"The reactions of the members of a class to a proposed settlement is a proper consideration for the trial court." *Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482 (E.D. Cal. 2010) (citing 5 Moore's Fed. Practice § 23.85[2][d]).  Class Representative's opinion of the settlement are especially important as "[t]he representatives' views may be important in shaping the agreement and will usually be presented at the fairness hearing; they may be entitled to special weight because the representatives may have a better understanding of the case than most members of the class."  Manual for Complex Litigation, Third, § 30.44 (1995).

Here, the Class Members strongly support the settlement as evidenced by the relatively high response rate and the absence of any Requests for Exclusion.  *See* Oshansky Decl., at ¶¶ 16, 17. Each of the Class Representatives and their attorneys have extensive understanding of the merits of this settlement having

19

participated extensively in the strategy, formulation, filing,

litigation and negotiation process.  *See id*. at ¶ 44.  There have

been no objections to the Settlement by Class Members or any

other members of the public.

The settlement is fair and reasonable.

D.   Class Counsel's Requested Fees and Costs.

By separate motion, Plaintiffs' counsel also requests

approval of payments for attorneys' fees and costs in the amount

of $82,500 and $7,500, respectively.  Courts have long recognized

the "common fund" or "common benefit" doctrine, under which

attorneys who create a common fund or benefit for a group of

persons may be awarded their fees and costs to be paid out of the

fund.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir.

1998).  "[A] lawyer who recovers a common fund for the benefit of

persons other than himself or his client is entitled to a

reasonable attorney's fee from the fund as a whole."  *Staton v.*

*Boeing Co.*, 327 F.3d 938, 972 (9th Cir. 2003) (quoting *Boeing Co.*

*v. Van Gemert*, 444 U.S. 472, 478 (1980)).  Awarding a percentage

of the common fund is particularly appropriate "'when each member

of a certified class has an undisputed and mathematically

ascertainable claim to part of a lump-sum judgment recovered on

his behalf.'"  *Id*. (quoting *Boeing Co.,* 444 U.S. at 478-79).

Here, where the Settlement requires lump sum allocations to

each Settlement Class and applies distribution formulas pursuant

20

to which each Class Member who submits a valid claim will receive a mathematically ascertainable payment, application of the percentage of common fund doctrine is appropriate.

The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *Hanlon*, 150 F.3d at 1029; *Staton*, 327 F.3d at 952. However, the exact percentage varies depending on the facts of the case, and in "most common fund cases, the award exceeds that benchmark." *Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. 2009); *see also In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377-78 (N.D. Cal. 1989) ("nearly all common fund awards range around 30%").

Class Counsel seeks an attorney's fee award of $82,500, or 31.7% of the total Settlement amount.  When assessing whether the percentage requested is reasonable, courts look to factors such as: (a) the results achieved; (b) the risk of litigation; (c) the skill required, (d) the quality of work; (e) the contingent nature of the fee and the financial burden; and (f) the awards made in similar cases. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir.2002); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir.1990).

1.  <u>The Results Achieved.</u>

The individual claims in this case concerned defendants'

PDF created with pdfFactory trial version www.pdffactory.com

failure to reimburse Class Members for required safety footwear; failure to provide proper rest periods; failure to pay Employees all wages due at least twice per calendar month; and failure to pay all wages due upon termination or separation of employment. Such claims would not ordinarily produce large recoveries per claimant. Here, the NSF of $150,000 will provide the 167 Qualified Claimants with an average recovery of approximately $898.20 per claimant. Myette Decl., at ¶ 11.

### 2. The Risks Involved.

There were significant risks in pursuing this case. One of the primary issues involved in this case has to do with reimbursement for safety footwear, an unsettled are of the law. Another major issue was the timely provision of rest periods – an issue that is currently before the California Supreme Court in the *Brinker* and *Brinkley* cases. It is unknown what the outcome of the Supreme Court's decision will be, but an adverse decision could be prejudicial to the recovery in this case.

The Defendants also posed serious defenses to the claims. And defense counsel demonstrated that they were competent in defense of their client.

Plaintiffs' Counsel invested $76,171.50 in lodestar time and $10,000 in costs in litigating this case with no guarantee of recovery.

### 3. The Skill Required.

22

This case required specialized skills in litigating cutting-edge legal theories surrounding expense-reimbursement and rest periods.  Oshansky Decl., at ¶ 26.  Additionally, the case required extensive review and analysis of time records and information regarding Class Members' job duties in order to determine what violations of rest break and reimbursement law actually occurred.  *Id.* at ¶ 26.  Class Counsel has extensive experience in class action wage and hour litigation of this nature.  *See id.* at ¶ 2.

> 4.   The Contingent Nature of the Fee and the Financial Burden.

This case was conducted on a contingent fee basis against a well-represented Defendant.  Counsel has received no money from plaintiffs or any other source to litigate this case.  *See id.*, at ¶ 27.  The plaintiffs are all low-wage workers who could never meaningfully contribute to any such expenses.  Plaintiffs' counsel accepted the entire risk of litigation and chose to forego other meritorious, potentially fee-generating cases in order to vigorously litigate this cause.  *Id.*  Class Counsel was successful in effectuating a $260,000 settlement.

> 5.   Awards in Similar Cases.

The requested fee is comparable to similar wage and hour cases litigated in the Central Valley.  For example, this court has awarded the following fees:

23

- 33.3% in *Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482 (E.D. Cal. 2010), Case No. 1:07-cv-00227 OWW DLB;

- 30% in *Vasquez v. Aartman*, E.D. Cal. Case No. 1:02-CV05624 AWI LJO;

- 31.25% in *Baganha v. California Milk Transport*, Case No. 1:01-cv-05729 AWI LJO;

- 33.3% in *Randall Willis et al. v. Cal Western Transport*, and *Earl Baron et al. v. Cal Western Transport*, Coordinated Case No. 1:00-cv-05695 AWI LJO;

- 33.3% in *Benitez, et al. v. Jeff Wilbur and Lisa Wilbur*, Case No. 1:08-cv-01122 LJO GSA;

- 33.3% in *Chavez, at al. v. Petrissans*, Case No. 1:08-cv-00122 LJO GSA.

In light of the overall success, skill employed, the substantial legal risks associated with Plaintiffs' claims, the financial risks borne by Plaintiffs' Counsel, and similar awards made in similar cases, under a percentage-of-fund approach the requested attorney's fee award of 31.7% of the total amount created by the settlement (or $82,500) is reasonable under the circumstances.

6.   Lodestar Cross-Check.

Calculation of the lodestar amount may be used as a cross-check to assess the reasonableness of the percentage award. *Fernandez v. Victoria Secret Stores*, 2008 WL 8150856 (C.D. Cal

PDF created with pdfFactory trial version www.pdffactory.com

2008); *Vizacaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-51 (9th Cir. 2002).  First, the court must calculate the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.  *Cunningham v. County of Los Angeles*, 879 F.2d 481 (9th Cir. 1988).  Next, the court may increase or reduce the presumptively reasonable lodestar fee. *Quesada v. Thomason*, 850 F.2d 537, 539 (9th Cir. 1998) (*citing City of Riverside v. Rivera*, 477 U.S. 561 (1986)).

The billing records of Class Counsel Orshansky & Yeremian LLP reveal the following hours billed (both completed and to be completed) by three lawyers:

| NAME | HOURS | RATE | TOTAL |
|------|-------|------|-------|
| Orshansky & Yeremian LLP | | | |
| Anthony J. Orshansky | 59.2 | $520 | $30,784.00 |
| David H. Yeremian | 58.5 | $450 | $26,325.00 |
| Justin Kachadoorian | 49.7 | $325 | $16,152.50 |
| Anthony J. Orshansky (future) | 3.0 | $520 | $1,560.00 |
| David H. Yeremian (future) | 3.0 | $450 | $1,350.00 |
| Total | 173.4 | | $76,171.50 |

*See* Orshansky Decl., at ¶ 35.

The number of hours billed in this case is reasonable under the circumstances.  In addition to considerable discovery and preparation for mediation, there were also unique, cutting-edge issues of law to investigate.  Similar cases have reached settlement with over 200 billed hours of attorney time.  *See Alvarado v. Nederend*, 1:08-cv-01099 OWW DLB (wage and hour class action involving unsettled issues related to meal and rest breaks with approximately 150 class members reached settlement after

25

1   Class Counsel expended over 300 hours).

2       Likewise, the hourly rates presented by counsel are also

3   reasonable.  Though prevailing hourly rates in the Eastern

4   District of California are in the $400/hour range, Class

5   Counsels' rates appear to fall within the reasonable rates of the

6   Laffey Matrix.  The Laffy Matrix is a widely recognized

7   compilation of attorney and paralegal rate data used in the

8

9   District of Columbia, frequently used in fee awards cases.  The

10  Laffey Matrix reflects a paralegal rate of $161, a 1-3 year

11  lawyer rate of $294, a 4-7 year lawyer rate of $361, an 8-10 year

12  lawyer rate of $522, an 11-19 year lawyer rate of $589, and a 20+

13  year lawyer rate of $709.  The district court in *Fernandex v.*

14  *Victoria Secret Stores*, LLC, 2008 WL 8150856, *15 (C.D. Cal. July

15  21, 2008), increased the Laffey Matrix amounts by the difference

16  between the cost of living increase provided to Judicial branch

17  employees in the Washington D.C. area and that provided to

18  employees in the Los Angeles area.  That difference is 2.94

19  percent as of the 2011 pay tables.  Taking the 11-19 years out

20  bracket as an example, the adjusted Laffey Rate for a 11-19 year

21  lawyer is $606 ($589 * 1.0294).  Mr. Orshansky's rate of $520 is

22  lower than the adjusted Laffey Matrix for an attorney with equal

23  years in practice.  The $450 billed by Mr. Yeremian is about 15%

24  lower than the 8-10 year attorney rate of $537.  Finally, Mr.

25  Kachedoorian's rate of $325 is also about 15% lower than the 4-7

26

PDF created with pdfFactory trial version www.pdffactory.com

year attorney rate of $371.  The lodestar cross-check shows that Class Counsels' hourly rate and resulting fees of $76,171.50 are reasonable.  The Court does not intend this finding to have any precedential effect, as the fee scale is higher than rates prevailing in the Central Valley.

The amount requested by Class Counsel of $82,500.00 is greater than its lodestar amount of $76,171.50.  However, adjustments to increase or decrease the lodestar amount are sometimes appropriate to justify use of a "lodestar multiplier." *Clark v. City of Los Angeles*, 803 F.2d 987, 991 (9th Cir. 1986); *see also Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002).  "It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases."  *Fischel*, 307 F.3d at 1008 (*citing In re Washington Public Power Supply System Securities Litig. v. Continental Ins. Co.*, 19 F.3d 1291, 1299 (9th Cir. 2002)).  Generally, a district court has discretion to apply a multiplier to the attorney's fees calculation to compensate for the risk of nonpayment.  *Fischel*, 307 F.3d at 1008; *see also In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig. v. Exxon Corp.*, 109 F.3d 602 (9th Cir. 1997).

The "lodestar multiplier" is calculated by dividing the

27

PDF created with pdfFactory trial version www.pdffactory.com

percentage fee award by the lodestar calculation.  Fischel, 307 F.3d at 1008.  Here, the multiplier of 1.08 is calculated by dividing $82,500.00 by $76,171.50.  To determine whether the lodestar multiplier is reasonable the following factors may be considered: (1) the amount involved and the results obtained, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.  *Id.* (citing Kerr v. Screen Extras Guild, Inc., 526 F.2d 6 (9th Cir. 1975)).

First, Class Counsel achieved a good result and generated a significant benefit for the class amounting to the Net Settlement Fund of $150,000 for the benefit of a class of approximately 239 members.  Based on the claims rate, the 167 Class Members who submitted claims will receive the entirety of the NSF, an average of $898.20.  *See* Myette Decl., at ¶ 11.

Second, Plaintiff's safety footwear reimbursement claims presented arguable questions for Class Counsel in light of the

28

competing precedent proffered by both parties.  Similarly,

Plaintiff's rest break claims raise doubts as California's rest

break law is currently in flux with *Brinker* currently pending

before the California Supreme Court.

Third, Class Counsel competently performed.  Class Counsel

avoided protracted litigation by conducting significant

investigation of the class claims, and efficiently communicating

and exchanging information with Defense counsel so that the

parties could successfully mediate the case.  In preparation for

this case, Class Counsel investigated the potential claims and

class members; comprehensively reviewed many pages of documents;

interviewed the named Plaintiffs; and conducted substantial

discovery into Defendant's policies regarding rest periods,

expense reimbursement, and safety requirements.  Orshansky Decl.,

at ¶ 28.

Lastly, Class Counsel undertook considerable financial risks

in this litigation by accepting this case on a contingency basis.

Orshansky Decl., at ¶ 27.  There was no guarantee they would

recoup their fees or costs.  *Id.*  Class Counsel has not received

any payment for their time or their expenses, which they began

incurring over a year ago. *Id.*  Additionally, Class Counsel had

to forego other work in order to maintain this case. *Id.*

Finally, the requested amount, 31.7% of the total settlement, was

less than the 40% contingency percentage that Plaintiffs agreed

29

PDF created with pdfFactory trial version www.pdffactory.com

Class Counsel could receive.  *Id.* at ¶ 30.

Based on the overall success, the skill with which the case was prosecuted, the substantial legal risks associated with Plaintiffs' claims, and the financial risks borne by Plaintiffs' Counsel, Plaintiff's request for a multiplier of 1.08 of its lodestar is reasonable.  *See, e.g. Steiner v. Am. Broadcasting Co., Inc.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007)(approving multiplier of 6.85 and citing cases with comparable or higher multipliers); *Vizcaino*, 290 F.3d at 1051 (finding no abuse of discretion in awarding a multiplier of 3.65).

E.   <u>Class Counsel's Request for Costs.</u>

Class Counsel incurred out-of-pocket costs totaling approximately $6,737.19.  The bulk of the incurred costs included filing fees, costs related to the service of process, mediation fees, courier and attorney-service costs for court filings, copy and printing charges for documents, and parking and postage charges.  Orshansky Decl., at ¶¶ 40, 41.  Such costs are routinely reimbursed in these types of cases.  *See, In re United Energy Corp. Sec. Litig.*, 1989 WL 73211, at *6 (C.D. Cal. 1989) (quoting Newberg, Attorney Fee Awards, § 2.19 (1987)); *see e.g. Vasquez*, 266 F.R.D. at 493 (Class Counsel litigation expenses payment of approximately $9,000 was fair and reasonable in similar case).

Here, the actual costs incurred are less than the estimated

30

PDF created with pdfFactory trial version www.pdffactory.com

$7,500, which was included in the Class Notice and to which no

Class Member objected.  Plaintiff's request, which is $6,737.19,

is reasonable.

F.   <u>Class Representative Enhancement.</u>

Pursuant to the Settlement, Plaintiff seeks an enhancement

in the amount of $4,000 to the named Plaintiffs Tyrus Collins and

James Greer.  Orshansky Decl., at ¶ 47.  This payment is intended

to recognize the time and efforts that the named Plaintiffs spent

on behalf of the Class Members.  *Id.* at ¶¶ 44-46.

"Courts routinely approve incentive awards to compensate

named plaintiffs for the services they provide and the risks they

incurred during the course of the class action litigation."

*Ingram v. The Coca-Cola Company*, 200 F.R.D. 685, 694 (N.D. Ga.

2001) (internal quotations and citations omitted).  In *Coca-Cola*,

the Court approved service awards of $300,000 to each named

plaintiff in recognition of the services they provided to the

class by responding to discovery, participating in the mediation

process, and taking the risk of stepping forward on behalf of the

class. *Coca-Cola*, 200 F.R.D. at 694; *see, e.g., Van Vranken v.*

*Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995)

(approving $50,000 participation award to plaintiffs); *Glass v.*

*UBS Financial Services, Inc.*, 2007 WL 221862, at *17 (N.D. Cal.

Jan. 26, 2007) (approving $25,000 enhancement to each named

plaintiff).

31

In this case, among other things, the named Plaintiffs: (1) provided significant assistance to Class Counsel; (2) endured lengthy interviews; (3) provided documents and information; (4) helped analyze documents produced by defendants; (5) and participated in the mediation, which was a full day session requiring very careful consideration, evaluation and approval of the terms of the Settlement Agreement on behalf of the Class. *See* Orshansky Decl., at ¶44.  Moreover, as with any plaintiff who files a civil action, Plaintiffs undertook the financial risk that, in the event of a judgment in favor of Defendant in this action, they could have been personally responsible for the costs awarded in favor of the Defendant.  *See, e.g., Whiteway v. Fed Ex Kinkos Office & Print Services*, Inc., No. C 08-2320 SBA, 2007 WL 4531783, at **2-4 (N.D. Cal. Dec. 17, 2007).

G.   Claims Administrator Fee.

The Class Notice provided that the Claims Administrator would receive a fee of up to $10,000.  Plaintiffs request that the full amount of $10,000 be approved as Rust's fee.  The Declaration of Amanda J. Myette, a Project Manager at Rust, explains the tasks undertaken by Rust to accomplish notifying the Class of the settlement and administering its terms.  Ms. Myette estimates administration costs of $10,000, taking into consideration both costs incurred to date and those anticipated to be incurred in the future.  This request is substantially

32

PDF created with pdfFactory trial version www.pdffactory.com

1  lower than previous administrator fees awarded in this District.

2  *See Vasquez*, 266 F.R.D.at 483-84 ($25,000 administrator fee

3  awarded in wage and hour case involving 177 potential class

4  members).

5

6                          IV. CONCLUSION

7       For all the reasons set forth above:

8       (1) The Settlement Class is CERTIFIED;

9       (2) The Class Settlement is APPROVED;

10      (3) The payment of $82,500 in attorney's fees (31.7% of the

11  Maximum Settlement Value and $7,500 in costs is APPROVED;

12      (4) The payment of $4,000 enhancement to each of the named

13

14  Plaintiffs, Tyrus Collins and James Greer, is APPROVED;

15      (5) The payment of $10,000 to the Settlement Administrator

16  is APPROVED.

17

18  IT IS SO ORDERED.

19  Dated: June 28, 2011

20                          /s/ Oliver W. Wanger
                            United States District Judge
21

22

23

24

25

26

27

28
                              33